THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WINIFRED L. MOSS, Defendant-Appellee.

Fifth District    No. 5—03—0210

Opinion filed October 22, 2004.

KUEHN, J., specially concurring.
WELCH, J., dissenting.

Rod Wolf, State's Attorney, of Harrisburg (Norbert J. Goetten, Stephen E. Norris, and Sharon Shanahan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Elaine M. Belcher, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE DONOVAN delivered the opinion of the court:

Defendant, Winifred L. Moss, was arrested for possession of a controlled substance. Defendant filed a motion to suppress evidence, which the circuit court of Saline County granted. The State appeals pursuant to Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)). We affirm.

On November 8, 2002, at approximately 4 p.m., Illinois Secretary of State Police Investigator Lowe stopped a truck driven by John Sanders for a speeding violation. Defendant owned the truck and was seated in the passenger seat. A third man, Shawn McGee, sat in the middle.

Prior to approaching the vehicle, Lowe called in the license plate and was cautioned that the registered owner of the truck was a parolee. Lowe requested identification from all three men and returned to his squad car to run checks on each of them. Lowe was told that both defendant and Sanders had drug-related criminal histories. Illinois State Trooper Boyles overheard the information and offered his assistance to Lowe. Boyles was already aware of defendant's prior record and was personally aware of McGee's recent arrest for a gun violation. Lowe accepted his offer. After verifying that Sanders' license was valid even though broken in two, Lowe returned to defendant's truck. By this time, Sanders had exited the vehicle. Lowe informed Sanders he needed to get a new license and then told him he was going to issue him a speeding ticket. Lowe returned to his squad car and began writing the ticket. Boyles arrived at the scene as Lowe was exiting his squad car after writing the ticket. Lowe then asked defendant for permission to search the truck, which defendant gave. Lowe next asked McGee and defendant to exit the vehicle. McGee stood with Sanders in front of the truck, and defendant walked to the rear, where he met Boyles. Lowe did a brief pat-down search of Sanders and McGee without asking permission and then searched the truck. Boyles conducted a pat-down of defendant at the same time. The pat-down revealed a hard object, slightly larger than two nine-volt batteries, in defendant's crotch area. Concerned that the object might be a weapon, Boyles asked defendant what the object was. Defendant refused to answer. Boyles then asked defendant to open his pants so he could remove the object. Defendant reached in his pants and withdrew a package containing two rocks of cocaine and a powdery substance. Defendant was placed under arrest for unlawful possession of a controlled substance.

Defendant filed a motion to suppress the evidence. The court granted the motion because the evidence had been discovered as a result of a warrantless pat-down of defendant's person that was not supported by reasonable suspicion. The court concluded that Lowe had based the frisk of Sanders and McGee not on any particular observation but on procedure from general past experiences and safety reasons. Lowe admitted that other than the occupants' criminal histories there was no specific information or behavior which caused him to believe they were going to be a danger to him. Boyles also did not have any information, nor had he observed anything, which caused him concern for his safety or caused him to believe that the men were committing any offenses other than speeding. Prior to starting the pat-down, Boyles did not observe any bulges on defendant which gave rise to any suspicion that there might be something under his cloth-

ing. Boyles admitted he conducted the frisk because he did not take any chances and he always checked everyone who is out of the vehicle, even if the driver has been stopped for only a traffic violation.

The State argues on appeal that the trial court erred in granting defendant's motion to suppress evidence. The State asserts that the cocaine had been discovered as a consequence of an appropriate search conducted for purposes of officer safety. We agree with defendant that the frisk was conducted without reasonable suspicion that defendant was armed and dangerous.

A motion to suppress evidence generally presents mixed questions of law and fact. A reviewing court accords great deference to the factual findings of the trial court but considers *de novo* the ultimate determination whether to grant or deny the motion to suppress. *People v. Cox*, 202 Ill. 2d 462, 465-66, 782 N.E.2d 275, 278 (2002). When the ruling involves primarily factual determinations and assessments of credibility, the trial court's ruling will not be disturbed unless it is manifestly erroneous. *People v. Gonzalez*, 204 Ill. 2d 220, 223, 789 N.E.2d 260, 263 (2003).

■ The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. This provision applies to all seizures of the person, including seizures that involve only a brief detention that falls short of a traditional arrest. *Gonzalez*, 204 Ill. 2d at 225, 789 N.E.2d at 264; *Cox*, 202 Ill. 2d at 466, 782 N.E.2d at 278. Because a vehicle stop constitutes a seizure of the vehicle's occupants, a vehicle stop is therefore subject to the fourth amendment requirement of reasonableness. *People v. Bunch*, 207 Ill. 2d 7, 13, 796 N.E.2d 1024, 1029 (2003); *Gonzalez*, 204 Ill. 2d at 226, 789 N.E.2d at 265. The reasonableness of a traffic stop is analyzed under *Terry* principles (*Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)), because a traffic stop is more analogous to a *Terry* investigative stop than to a formal arrest. *Bunch*, 207 Ill. 2d at 13-14, 796 N.E.2d at 1029; *Gonzalez*, 204 Ill. 2d at 226, 789 N.E.2d at 265. Therefore, in addition to the requirement that the conduct constituting the stop be justified at its inception, the police officer's action must be reasonably related in scope to the circumstances which justified the interference in the first place. *Cox*, 202 Ill. 2d at 467, 782 N.E.2d at 278-79.

■ Here, no issue exists regarding the lawfulness of the initial stop of the vehicle. When a police officer observes a driver commit a traffic violation, the officer is justified in briefly detaining the driver to investigate the violation. *Cox*, 202 Ill. 2d at 468, 782 N.E.2d at 279. The officer may perform some initial inquiries and check the driver's

license, but if no further suspicion is aroused in the officer, the traffic stop should go no further. Rather, the officer should issue a warning ticket or citation, as appropriate, and allow the driver to leave. *Cox*, 202 Ill. 2d at 468, 782 N.E.2d at 279. " '[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.' [Citation.]" *Gonzalez*, 204 Ill. 2d at 233, 789 N.E.2d at 269. What we must analyze here, therefore, is the officers' conduct following the initial stop. Lowe's request for identification was facially innocuous and did not impermissibly prolong the length of the detention or change the fundamental nature of the stop. See *People v. Harris*, 207 Ill. 2d 515, 524, 802 N.E.2d 219, 225-26 (2003); *Gonzalez*, 204 Ill. 2d at 236, 789 N.E.2d at 270. It is also well established that following a lawful traffic stop, the police may order the driver and any passengers out of the vehicle pending the completion of the stop, without violating the protections of the fourth amendment. *Bunch*, 207 Ill. 2d at 14-15, 796 N.E.2d at 1029; *People v. Sorenson*, 196 Ill. 2d 425, 433, 752 N.E.2d 1078, 1084 (2001). A stop for a minor traffic violation does not justify a general search of the vehicle, however, and, without more, does not provide a reasonable basis for believing that an occupant is armed and dangerous. *People v. Robinson*, 322 Ill. App. 3d 169, 175, 748 N.E.2d 739, 744 (2001). An officer's authority to investigate may not become a subterfuge to obtain other evidence of criminal activity merely based on the officer's suspicion or curiosity. *Robinson*, 322 Ill. App. 3d at 175, 748 N.E.2d at 744. On the other hand, when the officer reasonably believes that his safety is in danger, he may conduct a limited search or frisk of an individual for weapons. *People v. Flowers*, 179 Ill. 2d 257, 262, 688 N.E.2d 626, 629 (1997); *Robinson*, 322 Ill. App. 3d at 175, 748 N.E.2d at 745. The officer conducting the frisk must be able to point to specific, articulable facts that, when taken together with natural inferences, reasonably warrant the intrusion. *Flowers*, 179 Ill. 2d at 264, 688 N.E.2d at 630. The officers here could not do so. The evidence presented at the suppression hearing failed to establish any facts which would support a reasonable belief that defendant was armed and dangerous. Both officers candidly admitted that they did not have any reason to believe that defendant was armed. Defendant did not appear to be nervous or acting strangely, and Boyles observed no suspicious bulges before starting the pat-down. Rather, the pat-down was a general precautionary measure on Boyles' part. Likewise, nothing occurred during the stop to allow Lowe to legally expand the scope of the stop into a drug investigation. Neither of the officers

testified that the odor of drugs was detected or that the occupants appeared to be under the influence of drugs or that drug paraphernalia or drugs were visible. Lowe's decision to search the vehicle and its occupants was based solely on the occupants' criminal histories. That information provided no more than a hunch that drugs might be found. Hunches, however, are insufficient to establish reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 145 L. Ed. 2d 570, 576, 120 S. Ct. 673, 676 (2000).

The State counters that defendant consented to such searches when he accepted the terms of his parole. The State further asserts that, in the case of parolees and probationers, an individual's reasonable expectation of privacy under the fourth amendment is significantly limited by the supervisory relationship and restrictions imposed by the state. See *United States v. Jones*, 152 F.3d 680, 686 (7th Cir. 1998). While recognizing this fact, the trial court concluded that consent is not automatically given by a parolee upon the signing of the document describing the parole conditions. We agree with the conclusion of the trial court.

The Illinois Supreme Court in *People v. Lampitok*, 207 Ill. 2d 231, 798 N.E.2d 91 (2003), held that a search of a probationer upon no individualized suspicion is constitutionally unreasonable and that agreeing to a probation order does not constitute a prospective consent to all probation searches or a waiver of all fourth amendment rights. *Lampitok*, 207 Ill. 2d at 252, 262, 798 N.E.2d at 105, 110. The court further stated there was no constitutionally significant difference between the status of parolees and the status of probationers for fourth amendment purposes. *Lampitok*, 207 Ill. 2d at 256 n.1, 798 N.E.2d at 107 n.1. Defendant's parole status might have reduced his expectation of privacy, but it did not eliminate it entirely. The "special needs" associated with the probation and parole systems might justify departures from the usual warrant and probable-cause requirements, but the permissible impingement on a parolee's privacy is not unlimited. *Griffin v. Wisconsin*, 483 U.S. 868, 873-75, 97 L. Ed. 2d 709, 717-18, 107 S. Ct. 3164, 3168-69 (1987). No case purports to authorize substantial invasions of the privacy of a probationer or parolee without any suspicion of individualized wrongdoing whatsoever, and we decline to so extend the law. Neither Lowe nor Boyles had any reasonable suspicion that defendant was engaged in criminal activity. Consequently, we, too, conclude that the search of defendant was unreasonable.

For the aforementioned reasons, we affirm the order of the circuit court of Saline County.

Affirmed.

JUSTICE KUEHN, specially concurring:

I write to address several of the observations expressed by our esteemed colleague in his dissent from today's decision.

It is important to understand that the detention required to issue John Sanders (Sanders) a speeding citation became unlawful long before any reason to conduct pat-down searches might have reasonably developed. The speeding ticket was written, and the reason for any further detention was over, before anyone even thought of conducting a pat-down search.

When Officer Lowe (Lowe) obtained identification from the defendant, a passenger, and proceeded to run a criminal history check on him, he exceeded the scope of the traffic stop. See *People v. Harris*, 207 Ill. 2d 515, 802 N.E.2d 219 (2003) (warrant checks conducted on a passenger's identification changed the fundamental nature of a minor traffic stop and exceeded the scope of the initial detention in violation of the fourth amendment). After conducting a probe into the criminality of the traffic offender's passengers, Lowe wrote up Sanders' speeding ticket. At that point, no further detention was necessary or warranted in order to fulfill the lawful reason for detention. However, Lowe again veered from the business at hand. Instead of giving Sanders his ticket and sending him on his way, Lowe asked for permission to conduct a search of the vehicle. His request further prolonged the detention beyond the legal detention authorized by the probable cause that Sanders' heavy foot had provided. See *People v. Gonzalez*, 204 Ill. 2d 220, 789 N.E.2d 260 (2003). Simply put, had the officers afforded the captive threesome their fourth amendment rights, there would have been no need whatsoever to frisk for weapons.

Our colleague writes, "I believe that a pat-down of the three men was objectively reasonable and was warranted under all existing precedent." 353 Ill. App. 3d at 672. He no doubt feels that the circumstances facing Lowe and Illinois State Trooper Boyles (Boyles) would cause most other law enforcement officers to feel endangered. Conversely, he must believe that Lowe and Boyles were both unreasonable to think otherwise.

Whether an officer possesses safety concerns sufficient to warrant a pat-down search is a circumstance measured by the facts known to the officer at the time. The question is whether the officer can articulate facts which would lead someone to reasonably suspect that

a detainee might be armed and dangerous. The dissent answers this question affirmatively because of the officers' knowledge of their detainees' criminal histories. With all due respect, I can think of no case that permits the search of someone's person because of familiarity with his or her past misconduct. The suspicion must arise from current observations in the conduct or behavior of the detainee, not the detainee's mere status as someone who possesses a past criminal tendency.

In an effort to heighten the objectively reasonable police officer's fear factor, the dissent tells us that "darkness" was "quickly approaching" at 4 p.m. on November 8, 2002. 353 Ill. App. 3d at 672. That may have been the case on the streets of Juneau, Alaska, but on the byways of Saline County, Illinois, where this stop occurred, there was probably close to an hour of daylight remaining by the time that Lowe finished writing Sanders his speeding ticket. Both officers were able to observe all of their detainees' behavior in God's good sunlight. And their observations revealed nothing that gave rise to any fear or suspicion of danger, reasonable or otherwise. This is not a conclusion that I reach from the facts that the arresting officers presented. This was the officers' testimony—their collective belief based upon their observations at the time of the stop.

More importantly, both officers plainly testified that the pat-down searches were nothing more than *routine procedure* before conducting a consent search of the vehicle. They apparently do it all the time as a matter of protocol.

Our colleague suggests that routine pat-down searches are constitutionally permissible. He thinks that the noninvasive nature of a pat-down search makes it "permissible as a matter of routine" (353 Ill. App. 3d at 672) rather than a matter requiring just cause. He then writes:

> "Following a prescribed routine with every suspect who is removed from a vehicle during a traffic stop is a prudent, sensible course of action for a police officer to follow. Such a procedure is not invasive and helps guarantee the safety of the police officers serving and protecting the rest of us. We should support basic routine safety precautions on the part of those officers, so that they and we can be assured that they will return safely to their homes and families at the end of their shifts." 353 Ill. App. 3d at 672.

We do support police conduct designed to ensure officer safety. That support is provided in a manner consistent with the privacy rights of our citizenry. If there is reason to feel endangered, to suspect harm, the constitution permits a pat-down search for weapons. However, the constitution does not allow pat-down searches of traffic

offenders as an unvarying or habitual method of police procedure. Nor should it.

Perhaps our colleague has never found himself in a situation where he had to submit to a pat-down search. Anyone who has ever experienced a trained officer's attempt to detect concealed weapons through a thorough search of the outer clothing would not consider it noninvasive. Pat-down searches, while less intrusive than strip searches, constitute a substantial invasion of personal privacy. Our colleague might well note where Boyles' hands were when he discovered the contraband in this case.

There is nothing "sensible," much less constitutional, about "[f]ollowing a prescribed routine" (353 Ill. App. 3d at 672) that requires every traffic offender to spread-eagle for a weapons search. Indeed, it is decidedly unreasonable to think that officers should grope the underarms, upper thighs, and crotch of every person, male and female, whom they stop for speeding. Because I believe that the promise of freedom from unreasonable searches and seizures protects people from having their bodies routinely probed during traffic stops, I specially concur.

I specially concur.


JUSTICE WELCH, dissenting:

I respectfully dissent. The validity of a weapons pat-down conducted during a valid investigatory stop is assessed by an objective standard. *People v. Flowers*, 179 Ill. 2d 257, 264 (1997). The question is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Flowers*, 179 Ill. 2d at 264. Although the standard is an objective one, the officer's subjective belief regarding the safety of the situation is one of the factors that may be considered in determining whether the weapons pat-down was valid under *Terry*. *Flowers*, 179 Ill. 2d at 264.

In the case at bar, Trooper Boyles' subjective belief regarding the safety of the situation might not have warranted the pat-down of the defendant. However, the officer's subjective belief is not dispositive. *Flowers*, 179 Ill. 2d at 264. Even giving Trooper Boyles' subjective belief its due weight, I believe that an objective evaluation of the circumstances of this case demonstrates that the pat-down was warranted under all existing precedent, that the evidence seized could reasonably have been construed during the pat-down to be a weapon, and that the evidence should not have been suppressed.

The testimony adduced before the trial court demonstrates that the two officers present at the scene of the traffic stop were dealing with three men the officers knew to have criminal histories—one of

the men was a parolee and another of the men had been arrested very recently for a gun violation. Furthermore, it was past 4 p.m. in early November, with darkness quickly approaching. One officer was to watch the three men while the other officer, with the permission of the defendant, searched the truck, an entirely separate task that placed both the searching officer and the guarding officer in compromising positions. Under these circumstances I believe that a pat-down of the three men was objectively reasonable and was warranted under all existing precedent. I also believe that given the size of the object discovered on the person of the defendant during the pat-down and given the testimony of Trooper Boyles, that object could easily have been construed to be a weapon. I conclude, accordingly, that the removal of the object from the defendant's person was warranted. Thus, the discovery that the object was in fact two rocks of cocaine was legitimate, and the evidence should not have been suppressed.

I note as well that I believe it is important to distinguish between a full search of a suspect's person, which I agree should require that the officer reasonably believe that his or her safety is in danger, and a simple pat-down such as occurred in this case, which I believe should be permissible as a matter of routine. Following a prescribed routine with every suspect who is removed from a vehicle during a traffic stop is a prudent, sensible course of action for a police officer to follow. Such a procedure is not invasive and helps guarantee the safety of the police officers serving and protecting the rest of us. We should support basic routine safety precautions on the part of those officers, so that they and we can be assured that they will return safely to their homes and families at the end of their shifts.