THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNIE WILSON, Defendant-Appellant.

First District (3rd Division)   No. 1—03—3552

Opinion filed September 14, 2005.

Michael J. Pelletier, State Appellate Defender, of Chicago (Melinda G. Palacio, Assistant Appellate Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Sally L. Dilgart, and Dragana Djordjevic, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Johnnie Wilson, who was on mandatory supervised release (MSR) from a 15-year sentence for armed violence, was convicted of possession of a controlled substance and sentenced to 8 years' imprisonment. On appeal, he contends that (1) the trial court erred in denying his motion to suppress evidence because the search pursuant to his MSR agreement violated his fourth amendment right to be free from unreasonable searches and seizures; (2) the evidence was insufficient to prove him guilty beyond a reasonable doubt; (3) the compulsory extraction and perpetual storage of his DNA profile violated his fourth amendment right; and (4) the trial court failed to provide him with accurate and complete admonishments pursuant to Supreme Court Rule 605(a) (210 Ill. 2d R. 605(a)). For the following reasons, we reverse the denial of defendant's motion to suppress evidence and remand this case for a new suppression hearing consistent with this opinion.

## BACKGROUND

On February 3, 2003, after serving one year of his MSR term, defendant was arrested and charged with possession of a controlled substance with intent to deliver. Prior to trial, defendant filed a motion to quash his arrest and suppress evidence. At the hearing, parole officer Raymond Hayes testified that in February 2003, he received information from his supervisor that an anonymous person had informed his supervisor that defendant had narcotics and guns in his apartment in violation of the conditions of his MSR. Officer Hayes then went to 1541 South Karlov in Chicago where he met two Chicago

police officers. Defendant's relative gave them permission to enter the apartment. Officer Hayes did not have a warrant to search the apartment, but did have in his files defendant's MSR agreement, which was introduced as an exhibit at the hearing. Paragraph 10 of the agreement states, "you shall consent to a search of your person, property or residence under your control." Officer Hayes testified that defendant signed the agreement in February 2002 and was still governed by the rules at the time of his arrest.

After entering the second-floor apartment with the relative's permission, Officer Hayes saw defendant emerge from a bedroom and handcuffed him. According to Officer Hayes, defendant told him that the bedroom was his bedroom. Officer Hayes then told defendant that he was there to search his room and the space over which he had control. Officer Hayes did not ask for defendant's consent to search the room and did not read him his *Miranda* rights. Hayes then watched the two Chicago police officers search the bedroom, where they found suspected cocaine and heroin in a pile of clothing.

At the conclusion of the hearing, the trial court found that defendant consented to the search as a condition of his MSR and that he did not enjoy the same rights as those free from the custody of the Illinois Department of Corrections. Accordingly, the trial court held that the search was proper and denied defendant's motion to quash his arrest and suppress evidence. However, the court granted defendant's motion to suppress his statement regarding the location of his bedroom due to Officer Hayes' failure to read him his *Miranda* rights.

At trial, Officer Hayes testified consistently with his testimony at the hearing. In addition, he described the location of the searched bedroom as "a few feet from the front door to your left as you come through the front door." He also explained that defendant reported his address to the Illinois Department of Corrections as part of the conditions of his mandatory supervised release. In addition to finding narcotics in a pile of clothing, narcotics were also found under the bed and in other locations in the bedroom.

Chicago police officer Daniel Paluck testified that the searched bedroom contained men's clothing and that, according to his recollection, defendant was the only male present in the apartment. Additionally, Officer Paluck testified that he saw a female whom he believed to be defendant's girlfriend emerge from the bedroom. Paluck did not retrieve any proof of residence from the bedroom, but stated that during processing defendant confirmed his address as 1541 South Karlov. The parties stipulated with respect to the testing of the narcotics and the chain of custody.

The trial court found that the searched room was defendant's bedroom and that he had constructive possession of the narcotics. Therefore, the trial court found defendant guilty of possession of a controlled substance and sentenced him to eight years' imprisonment.

ANALYSIS

Defendant contends that the search of his apartment conducted pursuant to a condition in his MSR agreement violated his fourth amendment right to be free from unreasonable searches and seizures. Specifically, he argues that (1) despite the condition in his MSR agreement requiring that he "shall consent to a search of [his] person, property or residence under [his] control," he retained some expectation of privacy; (2) the search was conducted without a warrant; and (3) the search was unsupported by reasonable suspicion that he possessed guns and narcotics. The State maintains that the search was proper because defendant consented to it as a condition of his MSR. Alternatively, the State argues it was a reasonable search considering the reduced expectations of privacy possessed by parolees and the State's significant interest in ensuring compliance with the conditions of their supervised release.

In reviewing a circuit court's ruling on a motion to suppress, findings of historical fact will be upheld unless they are against the manifest weight of the evidence. *People v. Pitman*, 211 Ill. 2d 502, 512, 813 N.E.2d 93, 100 (2004). However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted. Accordingly, we review *de novo* the ultimate question of whether the evidence here should be suppressed. *Pitman*, 211 Ill. 2d at 512, 813 N.E.2d at 101.

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Thus, a search does not infringe upon the fourth amendment if it is "reasonable," when "measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 136 L. Ed. 2d 347, 354, 117 S. Ct. 417, 421 (1996). Generally, the search of a home is only reasonable for fourth amendment purposes if it is conducted pursuant to a warrant grounded in probable cause. *Payton v. New York*, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382 (1980). However, the United States Supreme Court has found that under certain circumstances, a probation search can be reasonable without strict adherence to the ordinary warrant and probable cause requirements. *United States v.*

*Knights*, 534 U.S. 112, 121, 151 L. Ed. 2d 497, 506, 122 S. Ct. 587, 592 (2001); *Griffin v. Wisconsin*, 483 U.S. 868, 873, 97 L. Ed. 2d 709, 717, 107 S. Ct. 3164, 3168 (1987).[1]

Following the Supreme Court's decision in *Knights*, in order to determine if an MSR search is objectively reasonable under a lesser degree of suspicion, we are required to balance the privacy interests of a defendant on MSR against the State's interest in the search, with the search condition of his MSR being "a salient circumstance." *Knights*, 534 U.S. at 118, 151 L. Ed. 2d at 505, 122 S. Ct. at 591; *People v. Lampitok*, 207 Ill. 2d 231, 249, 798 N.E.2d 91, 103 (2003).

In *Lampitok*, our supreme court confronted this balancing test when concluding that the suspicionless search of a probationer's motel room pursuant to a search condition of her probation would be constitutionally unreasonable. In evaluating the governmental interests, the court espoused the same interests that were recognized by the Supreme Court in both *Griffin* and *Knights*. Those interests include recognizing that Illinois' probation system serves the dual goal of rehabilitation and protection of the public from crime. *Lampitok*, 207 Ill. 2d at 250, 798 N.E.2d at 104. The court held that administration of the probation system is a "special need" of the state beyond the typical needs of law enforcement that would justify a greater governmental intrusion on privacy than would be acceptable in the case of an ordinary citizen. *Lampitok*, 207 Ill. 2d at 250, 798 N.E.2d at 104.

The court further found that imposing the traditional warrant and probable cause requirements would unduly interfere with the State's ability to administer its probation system. The process of obtaining a warrant would delay the ability to respond to evidence of misconduct, and requiring probable cause would only facilitate the probationer's ability to conceal his misconduct in violation of the conditions of probation. *Lampitok*, 207 Ill. 2d at 250, 798 N.E.2d at 104. Based upon these considerations, our supreme court acknowledged that Illinois's

---

[1]While both *Knights* and *Griffin* involved probationers, our supreme court has indicated that there is no constitutionally significant difference between probation and parole for purposes of the fourth amendment. *People v. Lampitok*, 207 Ill. 2d 231, 256 n.1, 798 N.E.2d 91, 107 n.1 (2003), citing *United States v. Crawford*, 323 F.3d 700, 708 n.15 (9th Cir. 2003). See also *People v. Moss*, 353 Ill. App. 3d 663, 668, 820 N.E.2d 518, 523 (2004). Accordingly, we will treat probation cases as fully applicable to the present case. Additionally, we note that for those sentenced on or after February 1, 1978, the term is now identified as a mandatory supervised release (MSR) term rather than a parole term. 730 ILCS 5/5—8—1(d) (West 2002). Therefore, we apply the proper term to the present case as it applies to defendant.

probation system may justify a warrantless search of a probationer upon a lesser degree of suspicion than probable cause. *Lampitok*, 207 Ill. 2d at 250, 798 N.E.2d at 104.

■ The governmental interests espoused in *Knights*, *Griffin* and *Lampitok* equally apply in the case of those serving a MSR term. They, like probationers, require supervision and enjoy only " 'conditional liberty properly dependent on observance of special \*\*\* restrictions.' " *Griffin*, 483 U.S. at 874, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169, quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600 (1972); see also 730 ILCS 5/3—3—7 (West 2002) (setting forth the conditions of the MSR term). The same objectives of rehabilitation and community safety would justify a greater intrusion on privacy because the warrant requirement and heightened level of probable cause would interfere with the MSR system, delay responses to misconduct, and reduce the deterrent effect of the conditions of MSR.

While these governmental interests may "justify departures from the usual warrant and probable-cause requirements" (*Griffin*, 483 U.S. at 874, 97 L. Ed. 2d at 717, 107 S. Ct. at 3168), these interests do not necessarily authorize a substantial invasion of privacy without *any* level of individualized suspicion (*Griffin*, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169 (the permissible impingement on a probationer's privacy is not unlimited)). In determining the appropriate level of individualized suspicion, we must also consider defendant's expectation of privacy and its relationship to the search condition of his MSR term.

Like probationers, those on MSR have a reduced expectation of privacy compared to ordinary citizens because they are criminal offenders and because they are subject to certain restrictions as a condition of their release. *Lampitok*, 207 Ill. 2d at 250-51, 798 N.E.2d at 104; *People v. Moss*, 353 Ill. App. 3d 663, 668, 820 N.E.2d 518, 523 (2004). In Illinois, the conditions of MSR are governed by section 3—3—7 of the Unified Code of Corrections (the Code) (730 ILCS 5/3—3—7 (West 2002)). Paragraph 10 of section 3—3—7(a) addresses the relevant search condition. That paragraph requires that defendant "consent to a search of [his] person, property, or residence under [his] control." 730 ILCS 5/3—3—7(a)(10) (West 2002). However, the provision is silent with respect to the level, if any, of particularized suspicion that would be necessary to support a search.

In *Knights*, the defendant's probation order permitted searches " 'with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer.' " *Knights*, 534 U.S. at 114, 151 L. Ed. 2d at 502, 122 S. Ct. at 589. Based upon

the defendant's acceptance of this broad search condition, the Court concluded that the defendant had a "significantly diminished" expectation of privacy. *Knights*, 534 U.S. at 119-20, 151 L. Ed. 2d at 505, 122 S. Ct. at 591-92. In *Lampitok*, the probation order provided that the probationer " 'shall submit to a search of her person, residence, or automobile at any time as directed by her Probation Officer to verify compliance with the conditions of this Probation Order.' " *Lampitok*, 207 Ill. 2d at 236, 798 N.E.2d at 96. The court noted that, as in the present case, the probation order did not impose any particular level of individualized suspicion to support a search. However, in comparing the search conditions, the *Lampitok* court held that because the probationer agreed to a more limited search condition than the defendant in *Knights*, her expectation of privacy was not as diminished, and thus, more individualized suspicion was required by the fourth amendment. *Lampitok*, 207 Ill. 2d at 251-52, 798 N.E.2d at 105.

Here, the search condition applicable to defendant's MSR agreement apprises defendant that his expectation of privacy is diminished, but is not so broad as the condition in *Knights*, which expressly allowed for a search without a warrant and without reasonable cause. Accordingly, the search condition here, when compared to the search condition in *Knights* and *Lampitok*, supports the conclusion that while probable cause is not required, a search of defendant's home must be attendant to some lesser level of individualized suspicion to meet the reasonableness standard of the fourth amendment.

■ In an effort to argue that no level of individualized suspicion is required here, the State maintains that by accepting the conditions of his MSR agreement, defendant prospectively consented to all searches, thereby relieving defendant of any expectation of privacy and waiving his fourth amendment rights. Initially, we find that the State's argument is based upon a fundamental misconception of MSR in Illinois. Without citation to authority, the State asserts that defendant has "negotiated his release from actual physical custody," that without his prior agreement, he "would not be released," and that defendant was "given the privilege of parole, something that is not mandatory." Rather, the Code provides that the MSR term is a mandatory component of defendant's sentence. Except where a natural life sentence has been imposed, "every sentence shall include as though written therein a term in addition to the term of imprisonment." 730 ILCS 5/5—8—1(d) (West 2002). The statute then sets forth a mandatory term of three years' supervised release for first degree murder or a Class X felony, two years for a Class 1 or 2 felony, and one year for a Class 3 or 4 felony. 730 ILCS 5/5—8—1(d) (West 2002). Accordingly,

the MSR term is not a negotiated release or a privilege. Rather, it is a mandatory part of defendant's sentence.

Moreover, in *Lampitok*, the supreme court considered the effect of consent in relation to the conditions set forth in the probationer's order. The court found that the conditions required that the probationer "shall" do or refrain from doing certain things, and that the term "shall" connotes acceptance of a duty. *Lampitok*, 207 Ill. 2d at 260-61, 798 N.E.2d at 110. Therefore compliance was dependent on her future conduct and required action that she "shall submit" to a search. *Lampitok*, 207 Ill. 2d at 261, 798 N.E.2d at 110. Thus, the court held that "[c]reating such a duty implies a requirement of further action *** rather than a prospective consent toward possible future, unspecified searches." *Lampitok*, 207 Ill. 2d at 261, 798 N.E.2d at 110. The court further reasoned that the conditions, although mandatory, did not remove the element of choice; the probationer would either have to agree to permit the search or face revocation of her probation and possible incarceration. *Lampitok*, 207 Ill. 2d at 262, 798 N.E.2d at 110. Accordingly, the court held that "agreeing to the probation order did not constitute a prospective consent to all probation searches that waived fourth amendment protection." *Lampitok*, 207 Ill. 2d at 262, 798 N.E.2d at 110.

■ The same analysis is applicable here. The conditions of defendant's MSR agreement provide that he shall do or refrain from doing certain things, thereby creating a duty which implies the requirement of further action. By signing the agreement, defendant acknowledged that if he refuses to permit the search, he faces revocation of his MSR. However, his acknowledgment does not entirely relieve him of any expectation of privacy or waive his fourth amendment protection. *Lampitok*, 207 Ill. 2d at 262, 798 N.E.2d at 110; *Moss*, 353 Ill. App. 3d at 668, 820 N.E.2d at 523 (recognizing that consent is not automatic upon signing a document describing parole conditions).

Furthermore, the Supreme Court has acknowledged that the fourth amendment accords special protection to the intrusion into one's home. *Payton*, 445 U.S. at 589, 63 L. Ed. 2d at 653, 100 S. Ct. at 1381-82, quoting U.S. Const., amend. IV. Where the MSR search invades the home, it weighs heavily in the balance that determines whether the search is reasonable and remains a significant, rather than minimal, intrusion on defendant's albeit diminished expectations of privacy. *Lampitok*, 207 Ill. 2d at 252, 254, 798 N.E.2d at 105, 106. Accordingly, permitting a suspicionless search of defendant's home would offend the significantly protected status of the home, and thus, further supports the conclusion that defendant's expectation of privacy

is not completely extinguished. *Lampitok*, 207 Ill. 2d at 252, 798 N.E.2d at 105 ("[t]he primacy of fourth amendment protection against intrusions into a person's home further encourages us to require some level of individualized suspicion prior to a probation search of a probationer's residence").

We further reject the State's contention that defendant's expectation of privacy in his home is no different than his expectation when confined in a prison merely because he remains in the custody of the Department of Corrections. While the fourth amendment does not apply within the confines of a prisoner's cell (*Hudson v. Palmer*, 468 U.S. 517, 525-26, 82 L. Ed. 2d 393, 402, 104 S. Ct. 3194, 3200 (1984)), the Supreme Court has unequivocally rejected the notion that the status of parolees is legally comparable to that of prisoners in actual custody. *Morrissey*, 408 U.S. at 482, 33 L. Ed. 2d at 494-95, 92 S. Ct. at 2600-01; *United States v. Crawford*, 323 F.3d 700, 708-09 (9th Cir. 2003). Therefore, the mere fact that a defendant on MSR remains in custody is not dispositive of a defendant's privacy interests.

Based upon the totality of the circumstances, after balancing the State's interest in its MSR system with defendant's expectation of privacy, we conclude that a search of defendant's home pursuant to the conditions of his MSR agreement is reasonable if supported by reasonable suspicion. As the supreme court stated in *Lampitok*, most other federal courts have agreed that reasonable suspicion is the appropriate constitutional threshold for parole or probation searches, especially, as in this case, where they involve intrusion into the home. *Lampitok*, 207 Ill. 2d at 253, 798 N.E.2d at 105-06 (compiling a list of cases).

Accordingly, we find that the trial court erred in denying defendant's motion to suppress evidence on the basis that defendant consented to the search condition of his MSR agreement. Rather, the trial court must evaluate whether the officers had reasonable suspicion to believe that defendant had narcotics or guns in his home or otherwise violated the terms of his MSR so that the search was justified at its inception under the fourth amendment. Therefore, we reverse the denial of defendant's motion to suppress evidence and remand for a new suppression hearing consistent with our directive in this opinion. For these reasons, we need not address defendant's additional contentions.

Reversed and remanded.

QUINN, P.J., and GREIMAN, J., concur.