842 N.E.2d 699 (2005)
217 Ill.2d 511
299 Ill.Dec. 662
The PEOPLE of the State of Illinois, Appellant,
v.
Winifred MOSS, Appellee.
No. 99616.
Supreme Court of Illinois.
December 15, 2005.
Rehearing Denied January 23, 2006.
*701 Lisa Madigan, Attorney General, Springfield, and Rod Wolf, State's Attorney, Harrisburg (Gary Feinerman, Solicitor General, Linda D. Woloshin and Russell K. Benton, Assistant Attorneys General, Chicago, Norbert J. Goetten, Stephen E. Norris and Sharon Shanahan, Office of the State's Attorneys Appellate Prosecutor, Mt. Vernon, of counsel), for the People.
Daniel M. Kirwan, Deputy Defender, and Elaine M. Belcher, Assistant Defender, Office of the State Appellate Defender, *702 Mt. Vernon, for appellee, and Winifred Moss, pro se.
Justice GARMAN delivered the opinion of the court:
Defendant was arrested and charged in the circuit court of Saline County with one count of unlawful possession of a controlled substance. 720 ILCS 570/402(a)(2)(A) (West 2002). The evidence supporting this charge was recovered during a lawful traffic stop. Defendant was a passenger in the vehicle stopped by police and was also its registered owner. He gave consent to a search of the vehicle. While the vehicle search was in progress, an officer performed a pat-down search of defendant to check for weapons. At the time of this incident, defendant was on mandatory supervised release (MSR) from the Illinois Department of Corrections.
The circuit court granted defendant's motion to suppress cocaine that was seized during the pat-down search. The circuit court ruled that the search was illegal because there was no articulable suspicion to justify it. The appellate court affirmed. 353 Ill.App.3d 663, 289 Ill.Dec. 742, 820 N.E.2d 518. We granted the State's petition for leave to appeal (177 Ill.2d R. 315) to determine whether defendant's fourth amendment rights were violated when an officer lacking individualized suspicion of illegal activity performed a pat-down search of defendant, a parolee subject to a search condition. We now reverse the judgments of the appellate court and the circuit court.

BACKGROUND
According to testimony given at a suppression hearing, Illinois Secretary of State Police Officer Richard Lowe executed a traffic stop on Route 13 in Saline County between 3 p.m. and 4 p.m. on November 8, 2002. The vehicle he stopped, an orange truck, had been speeding. Before Officer Lowe exited his squad car, he notified a dispatcher of his location and the license plate number of the truck. He then approached the truck to ask for identification from the driver, John Sanders, and his two passengers, Shawn McGee and defendant. Defendant called Officer Lowe by his first name. This seemed odd to Lowe, who did not think he had previously met defendant. All three men complied with the officer's request for identification information, although Sanders produced a driver's license that was broken in half and defendant orally gave the officer his information instead of producing a license.
Officer Lowe returned to his car and relayed the identifications to his dispatcher. The dispatcher informed Officer Lowe that defendant, the registered owner of the truck, was a parolee.[1] The dispatcher also informed Lowe that Sanders had two prior drug-related arrests. This radio exchange was overheard by Illinois State Police Trooper Hobert Boyles, who recognized the names of the three men in the truck. Boyles knew through contact with other officers that all three "had prior arrests for and were known to possess firearms." He had also been personally involved in a recent arrest of McGee for a gun violation. Boyles contacted Lowe via radio to ask if Lowe would like his assistance, and Lowe accepted. Boyles drove to join Lowe at the site of the traffic stop.
Meanwhile, Lowe spoke with Sanders about his broken driver's license, and then *703 returned to his squad car to fill out a speeding citation. Once the citation was complete, he asked Sanders for his permission to search the truck. Although Lowe had no specific information about any illegal activity, he "felt that there might possibly have been some drugs in the vehicle." He based this belief on the histories of the men in the truck and the direction they were traveling, theorizing that they may have picked up or dropped off drugs in Marion. Sanders referred Officer Lowe's request to defendant, who agreed to a search of his truck. At about that time, Boyles pulled up behind Lowe's squad car.
Defendant, Sanders, and McGee had exited the truck in response to a request by Lowe. Lowe, speaking with Sanders and McGee, asked if either of the men "had anything." In response, Sanders stated that he had a knife, which Lowe took from him. Lowe then performed a pat-down search of both men. He did not ask their permission to execute this search. As Officer Lowe began to search the truck, Trooper Boyles performed a pat-down search of defendant. Boyles similarly did not ask defendant's permission. Boyles testified that it is his practice to perform pat-down searches for officer safety whenever subjects are outside a vehicle at a traffic stop, regardless of whether their behavior arouses any suspicion. He also testified that at no time did the actions of defendant, Sanders, or McGee put him in fear. Nothing he saw during the course of the traffic stop made him feel as if he were in danger, nor did he have any information that defendant and his associates were committing any offense other than speeding.
Boyles instructed defendant to face the front of Officer Lowe's car and clasp his hands behind his back. He patted down defendant's torso, back, legs, ankles, and groin. In doing so, Boyles felt two hard objects in the front of defendant's pants. He testified that these objects were approximately the size of a nine-volt battery, and that he is aware of weapons that are this size. Boyles also felt a few smaller hard pieces and a powdery substance. All of the items seemed to be contained in a bag. Boyles testified that he maintained contact with the hard object, trying to determine what it was. He asked defendant three times what was in his pants. When defendant did not answer his questions, Boyles ordered him to turn around and open the front of his pants. Instead, defendant removed the object from his pants. The object was a bag of a white, solid substance that field-tested positive for cocaine.
Defendant was arrested and charged with unlawful possession of a controlled substance. 720 ILCS 570/402(a)(2)(A) (West 2002). The circuit court granted a pretrial motion by defendant to suppress the evidence found in the pat-down search.
The court first concluded that individuals on MSR retain constitutional protection against intrusions, despite a condition of MSR which states that they "shall consent" to certain searches. The court determined that by signing the indication he had received notice of the conditions of his MSR, defendant did not prospectively consent to any search by a parole officer or police officer. Observing that failure to comply with the conditions of MSR could result in its revocation, the court concluded that Moss had the option of consenting to the search or losing his MSR.
The court next addressed whether the search was permissible without consent. It found that Officer Lowe's suspicion that drugs might be in the pickup was "a mere hunch." There was no evidence that the men were engaged in a crime. Trooper Boyles had no reason to believe the men were armed or that they were committing *704 a crime other than the speeding violation. The court concluded there were no articulable facts to justify the search. It later denied the State's motion to reconsider. The State brought an interlocutory appeal under Supreme Court Rule 604(a)(1) (188 Ill.2d R. 604(a)(1)).
A divided appellate court affirmed the ruling of the circuit court. The majority concluded that the evidence did not support a reasonable belief that defendant was armed and dangerous or engaged in criminal activity. 353 Ill.App.3d at 667-68, 289 Ill.Dec. 742, 820 N.E.2d 518. It agreed with the trial court's conclusion that defendant's MSR status may have reduced his expectation of privacy, but did not eliminate it entirely. 353 Ill.App.3d at 668, 289 Ill.Dec. 742, 820 N.E.2d 518. A special concurrence opined that the traffic stop became illegal long before the pat-down search of defendant. 353 Ill.App.3d at 669, 289 Ill.Dec. 742, 820 N.E.2d 518 (Kuehn, J., specially concurring). The concurring justice wrote that performing a records check on Sanders' passengers and asking permission to search the vehicle both impermissibly exceeded the scope of the traffic stop. 353 Ill.App.3d at 669, 289 Ill.Dec. 742, 820 N.E.2d 518 (Kuehn, J., specially concurring).
The dissent concluded that circumstances objectively warranted a pat-down of all three men. 353 Ill.App.3d at 671, 289 Ill.Dec. 742, 820 N.E.2d 518 (Welch, J., dissenting). The officers knew the men to have criminal histories, it was late on a November afternoon, and one officer would be in a compromising position while searching the truck. 353 Ill.App.3d at 671-72, 289 Ill.Dec. 742, 820 N.E.2d 518 (Welch, J., dissenting). The dissent noted that pat-down searches should be permissible as a matter of routine to guarantee the safety of police officers. 353 Ill.App.3d at 672, 289 Ill.Dec. 742, 820 N.E.2d 518 (Welch, J., dissenting). The special concurrence responded to this argument, emphasizing that "the constitution does not allow pat-down searches of traffic offenders as an unvarying or habitual method of police procedure." 353 Ill.App.3d at 670-71, 289 Ill.Dec. 742, 820 N.E.2d 518 (Kuehn, J., specially concurring).
We granted the State's petition for leave to appeal. 177 Ill.2d R. 315. In reviewing this decision, we examine first whether the terms of the defendant's MSR established consent to a pat-down search. Second, we determine whether the search was constitutional in the absence of consent.

APPLICABLE LAW
Review of a motion to suppress involves both questions of fact and law. People v. Pitman, 211 Ill.2d 502, 512, 286 Ill.Dec. 36, 813 N.E.2d 93 (2004). A reviewing court will uphold findings of historical fact made by the circuit court unless such findings are against the manifest weight of the evidence. Pitman, 211 Ill.2d at 512, 286 Ill.Dec. 36, 813 N.E.2d 93. However, we review de novo the ultimate question of whether the evidence must be suppressed, undertaking our own assessment of the facts in relation to the issues presented. Pitman, 211 Ill.2d at 512, 286 Ill.Dec. 36, 813 N.E.2d 93.
The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" U.S. Const., amend. IV. Reasonableness is measured in objective terms by examining the totality of the circumstances. Ohio v. Robinette, 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347, 354 (1996). Article I, section 6, of the Illinois Constitution provides the same level of protection against unreasonable searches and seizures as the fourth amendment *705 to the United States Constitution. People v. Tisler, 103 Ill.2d 226, 243, 82 Ill.Dec. 613, 469 N.E.2d 147 (1984). For the court to diverge from this "lockstep doctrine," there must be evidence in the language of the state constitution or in the debates and committee reports from its drafting that shows the drafters intended the state constitution to be construed differently. Tisler, 103 Ill.2d at 245, 82 Ill. Dec. 613, 469 N.E.2d 147; but see People v. Krueger, 175 Ill.2d 60, 74-76, 221 Ill. Dec. 409, 675 N.E.2d 604 (1996). The defendant has not pointed to any such evidence. Thus, we look only to the fourth amendment in this case. Although the fourth amendment generally requires a warrant supported by probable cause (People v. Flowers, 179 Ill.2d 257, 262, 227 Ill.Dec. 933, 688 N.E.2d 626 (1997)), there are "a few specifically established and well-delineated exceptions" to the warrant requirement (Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967)). Two of these exceptions are relevant to our analysis.
The first is the pat-down search recognized by the Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Terry held that "`where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot ...,' the officer may briefly stop the suspicious person and make `reasonable inquiries' aimed at confirming or dispelling his suspicions." Minnesota v. Dickerson, 508 U.S. 366, 372-73, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334, 344 (1993), quoting Terry, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. Further, when the officer reasonably believes the suspicious person is armed and dangerous, the officer may conduct a pat-down search for weapons. Dickerson, 508 U.S. at 373, 113 S.Ct. at 2136, 124 L.Ed.2d at 344; Terry, 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908; People v. Sorenson, 196 Ill.2d 425, 433, 256 Ill.Dec. 836, 752 N.E.2d 1078 (2001). The reasonableness of the officer's conduct is determined by whether a reasonably prudent person in the same circumstances would be warranted in the belief that the officer or another person is in danger. Terry, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.
The second relevant exception involves probationers. In Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), probation officers searched the home of the defendant, Griffin, and found a handgun. Griffin was on probation and thus was forbidden from possessing firearms. Griffin, 483 U.S. at 870-71, 107 S.Ct. at 3167, 97 L.Ed.2d at 715-16. Though warrantless, the search was conducted under the authority of Wisconsin's probation regulations. The regulations permitted probation officers to search the homes of probationers without a warrant if the officers had reasonable grounds to suspect the presence of contraband. A defendant who refused to consent to such a search violated the terms of his probation. Griffin, 483 U.S. at 871, 107 S.Ct. at 3167, 97 L.Ed.2d at 716. The Court held that the administration of the state's probation system presented "special needs" beyond normal law enforcement that made the requirements of a warrant and probable cause impracticable. Griffin, 483 U.S. at 873-74, 107 S.Ct. at 3168, 97 L.Ed.2d at 717. These special needs justified replacing the warrant and probable cause requirements with the lesser standard of "reasonable grounds," as established by the Wisconsin regulation permitting probation searches. Griffin, 483 U.S. at 875-76, 107 S.Ct. at 3169-70, 97 L.Ed.2d at 719. Thus, the search of Griffin's home was reasonable because it was conducted pursuant to a valid regulation governing probationers. The Court left open the question *706 of whether warrantless searches of probationers were otherwise reasonable under the fourth amendment. Griffin, 483 U.S. at 880, 107 S.Ct. at 3172, 97 L.Ed.2d at 722.
The Court later addressed the validity of a warrantless probationer search by a law enforcement officer in United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). Knights, the defendant, was subject to a probation condition requiring that he submit to a search by a probation or law enforcement officer at any time. Knights, 534 U.S. at 114, 122 S.Ct. at 589, 151 L.Ed.2d at 502. A detective suspected Knights' involvement in a string of vandalism incidents and noticed suspicious activity outside his apartment. Knights, 534 U.S. at 114-15, 122 S.Ct. at 589, 151 L.Ed.2d at 502-03. Based on Knights' probation condition, the detective searched Knights' apartment. He found evidence that led to Knights' indictment on arson charges. Knights, 534 U.S. at 115-16, 122 S.Ct. at 589-90, 151 L.Ed.2d at 503. The Supreme Court held that the search uncovering this evidence was valid, even though it was conducted for a law enforcement purpose rather than a probationary purpose.
The Court noted that Griffin's "special needs" holding made it unnecessary for that case to examine whether warrantless searches of probationers were reasonable for nonprobationary purposes. Knights, 534 U.S. at 117-18, 122 S.Ct. at 590-91, 151 L.Ed.2d at 504. In the absence of the special need served by administering a probation system, the Knights Court instead applied a general fourth amendment analysis to examine whether the search was reasonable under the totality of the circumstances. Knights, 534 U.S. at 118, 122 S.Ct. at 591, 151 L.Ed.2d at 505. The Court determined that Knights' status as a probationer informed both sides of the balance between his privacy and the legitimate government interests in the search. Knights, 534 U.S. at 118-19, 122 S.Ct. at 591, 151 L.Ed.2d at 505. The probation search condition significantly diminished Knights' reasonable expectation of privacy. Knights, 534 U.S. at 119-20, 122 S.Ct. at 592, 151 L.Ed.2d at 505. Knights' status as a probationer also increased the government's interest in searching him, as probationers are more likely to engage in criminal conduct than an ordinary member of the community. Knights, 534 U.S. at 120-21, 122 S.Ct. at 592, 151 L.Ed.2d at 506. Thus, the Court held that when an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable. Knights, 534 U.S. at 121, 122 S.Ct. at 593, 151 L.Ed.2d at 506-07. Although the Knights Court held that reasonable suspicion is sufficient to support a probation search, it did not address whether reasonable suspicion is required for such a search. Knights, 534 U.S. at 120 n. 6, 122 S.Ct. at 592 n. 6, 151 L.Ed.2d at 505 n. 6.
The defendants in Knights and Griffin were on probation, while defendant in this case is on MSR, the equivalent of parole. This court has stated generally that probationers and parolees share the same status for fourth amendment purposes. People v. Lampitok, 207 Ill.2d 231, 256 n. 1, 278 Ill.Dec. 244, 798 N.E.2d 91 (2003), citing United States v. Crawford, 323 F.3d 700, 708 n. 15 (9th Cir.2003); Gagnon v. Scarpelli, 411 U.S. 778, 782 & n. 3, 93 S.Ct. 1756, 1759 & n. 3, 36 L.Ed.2d 656, 661 & n. 3 (1973) (same guarantee of due process applies to revocation of parole and revocation of probation). Probationers and persons on MSR are similarly situated in the broad sense that both enjoy conditional *707 liberty. Crawford, 323 F.3d at 708 n. 15, citing United States v. Harper, 928 F.2d 894, 896 n. 1 (9th Cir.1991). However, the reasons for the imposition of each status are markedly different. Morrissey v. Brewer, 408 U.S. 471, 496 n. 6, 92 S.Ct. 2593, 2608 n. 6, 33 L.Ed.2d 484, 503 n. 6 (1972) (Douglas, J., dissenting) (probation is imposed in lieu of a prison sentence, while parole is imposed following a prison sentence).
Probation is a "mild and ambulatory" punishment, appropriate where an offender does not present a threat to the safety and security of a community. People v. Dowiels, 3 Ill.App.3d 813, 814, 279 N.E.2d 121 (1972). A court may impose a sentence of probation unless imprisonment is necessary to protect the public or probation would deprecate the seriousness of the offender's conduct. 730 ILCS 5/5-6-1(a) (West 2004). Thus, probation is incompatible with a prison term. People v. Williams, 179 Ill.2d 331, 336, 228 Ill.Dec. 176, 688 N.E.2d 1153 (1997); People v. Spera, 303 Ill.App.3d 834, 838, 237 Ill.Dec. 219, 708 N.E.2d 1259 (1999). In contrast, a term of MSR always accompanies a prison term. Every felony defendant who is sentenced to prison is also sentenced to a term of MSR. 730 ILCS 5/5-8-1(d) (West 2004). During MSR, the Department of Corrections retains custody of the defendant. 730 ILCS 5/3-14-2(a) (West 2004). Our sentencing scheme thus contemplates that an offender on MSR presents a greater threat to the public than a probationer. This distinction is relevant to the balancing test of Knights.

ANALYSIS

I. Consent
The Knights Court declined to decide whether the defendant's acceptance of a search condition constituted a complete waiver of his fourth amendment rights. Knights, 534 U.S. at 118, 122 S.Ct. at 591, 151 L.Ed.2d at 504-05. We are asked in this case to determine whether defendant's acceptance of a similar condition establishes such a waiver.
During the events of November 8, 2002, defendant was on MSR from the Illinois Department of Corrections. The state legislature has established a set of conditions applicable to every term of parole and MSR. 730 ILCS 5/3-3-7 (West 2004). These were reflected in the "Notice of Conditions of Parole/Mandatory Supervised Release" that the defendant received. On December 12, 2001, the defendant signed an acknowledgment that he was required to comply with the listed conditions. The document read, in part:
"Effective January 1, 2002, you are hereby obligated to comply with the following conditions:
You shall not violate any criminal statute of any jurisdiction during the parole or release term;
You shall refrain from possessing a firearm or other dangerous weapon;
You shall report to an agent of the Department of Corrections;
* * *
You shall obtain the permission of an agent of the Department of Corrections before changing your residence or employment;
You shall consent to a search of your person, property, or residence under your control;
You shall refrain from the use or possession of narcotics or other controlled substances in any form, or both, or any paraphernalia related to those substances and submit to a urinalysis test as instructed by a parole agent or the Department of Corrections."
*708 The notification that Moss signed warned him that "Failure to comply with these terms and conditions, in addition to any additional terms or conditions set by the Prisoner Review Board, may subject you to revocation of parole or mandatory supervised release." The authorization for this is found in section 3-3-9 of the Unified Code of Corrections (730 ILCS 5/3-3-9 (West 2004)), which establishes sanctions up to and including revocation of MSR when a defendant violates an MSR condition. Although the Prisoner Review Board is the disciplinary authority, law enforcement officers need not sit idly by when they witness a parole violation:
"A sheriff or other peace officer may detain an alleged parole or release violator until a warrant for his return to the Department [of Corrections] can be issued." 730 ILCS 5/3-14-2(c) (West 2004).
The State argues that by signing the agreement acknowledging his parole conditions, the defendant expressly consented to being searched. We considered a similar argument in People v. Lampitok, 207 Ill.2d 231, 278 Ill.Dec. 244, 798 N.E.2d 91 (2003). The probation condition at issue in Lampitok contained the following language:
"`11. That the Defendant shall submit to a search of her person, residence, or automobile at any time as directed by her Probation Officer to verify compliance with the conditions of this Probation Order.'" Lampitok, 207 Ill.2d at 236, 278 Ill.Dec. 244, 798 N.E.2d 91.
We determined that this provision did not constitute a waiver of fourth amendment protection or a prospective consent to all probation searches. Instead, we found that "the plain language of this probation search condition affirmatively required [the probationer's] probation officer to ask her to consentor submitto a particular search prior to conducting it." When asked, she could then decide whether to submit to the search or face the revocation of her probation. Lampitok, 207 Ill.2d at 261-62, 278 Ill.Dec. 244, 798 N.E.2d 91.
The State attempts to distinguish defendant's MSR condition from the condition at issue in Lampitok. First, the State argues that defendant's agreement provides for searches by any agent, while the probation condition in Lampitok provided for searches only by the probationer's probation officer. Further, the State draws a distinction between the use of the phrase "shall submit" in the condition at issue in Lampitok and the use of the phrase "shall consent" in the search condition of defendant's MSR. Whereas this court found that the phrase "shall submit" requires further action by the probationer, the State argues that the phrase "shall consent" amounts to a prospective waiver of rights. Defendant responds that, in either case, the operative word is "shall."
We agree with defendant. In Lampitok, the word "shall" indicated that by accepting the probation term, the probationer accepted an obligation to submit to a search when directed to do so. Similarly, defendant accepted an obligation to consent to a search when directed to do so. This conclusion is further supported by Lampitok's use of "submit" and "consent" in tandem. Lampitok, 207 Ill.2d at 262, 278 Ill.Dec. 244, 798 N.E.2d 91 (search condition required probation officer "to ask her to consentor submitto a particular search prior to conducting it"). The greater breadth of the parole condition in the case at bar is irrelevant. Although defendant's condition allows for a greater variety of searchers and searches, it still requires that he give his consent to each search before it is conducted.
*709 Other conditions of defendant's MSR similarly use the word "shall." For example, defendant "shall refrain" from possessing a firearm and "shall report" to the Department of Corrections. These conditions do not foreclose the opposite result. Defendant could choose to obtain a gun, or he could choose not to report to the Department of Corrections. Similarly, he can choose not to consent to a search. But if he makes any of these choices, he risks the revocation of his MSR. We hold that the search condition of defendant's MSR does not establish prospective consent to all searches.
We note that if Boyles had asked for defendant's consent to a pat-down search, defendant very well may have refused. This refusal would have violated the conditions of defendant's MSR. Faced with such a violation, Boyles would have been authorized to detain defendant. 730 ILCS 5/3-14-2(c) (West 2004). This authority gives weight to the search condition. It also gives officers a tool with which to address their safety concerns.

II. Totality of the Circumstances
In the absence of consent, we next address whether the pat-down search of defendant was otherwise appropriate. First, we clarify that the "special needs" test of Griffin, 483 U.S. at 873-74, 107 S.Ct. at 3168, 97 L.Ed.2d at 717, does not apply here. The special needs of the state's MSR program are not at issue because the search of defendant was not performed for any supervisory purpose. See Knights, 534 U.S. at 118, 122 S.Ct. at 591, 151 L.Ed.2d at 505. Instead, Trooper Boyles and Officer Lowe acted pursuant to their ordinary law enforcement responsibilities when they carried out a traffic stop of a speeding vehicle. Lacking a special need similar to the one found in Griffin, our analysis utilizes the totality of the circumstances test applied in Knights. Knights, 534 U.S. at 118, 122 S.Ct. at 591, 151 L.Ed.2d at 505; see also Lampitok, 207 Ill.2d at 248, 278 Ill.Dec. 244, 798 N.E.2d 91.
In contrast to Knights, the case before us involves a vehicle stop. Traffic stops are more analogous to a Terry investigative stop than to a formal arrest. Knowles v. Iowa, 525 U.S. 113, 117, 119 S.Ct. 484, 488, 142 L.Ed.2d 492, 498 (1998), citing Berkemer v. McCarty, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984). Therefore, we analyze such stops under the principles of Terry. People v. Jones, 215 Ill.2d 261, 270, 294 Ill.Dec. 129, 830 N.E.2d 541 (2005); People v. Brownlee, 186 Ill.2d 501, 518-21, 239 Ill.Dec. 25, 713 N.E.2d 556 (1999). A Terry analysis involves two steps. We consider, first, whether the officer's action was justified at its inception and, second, whether it was reasonably related in scope to the circumstances that justified the interference in the first place. Terry, 392 U.S. at 19-20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. A vehicle stop based on an officer's observation of a traffic violation is valid at its inception. People v. Gonzalez, 204 Ill.2d 220, 228-29, 273 Ill. Dec. 360, 789 N.E.2d 260 (2003); Sorenson, 196 Ill.2d at 433, 256 Ill.Dec. 836, 752 N.E.2d 1078. We thus focus on whether the subsequent actions of Officer Lowe and Trooper Boyles were reasonably related in scope to the circumstances that justified the initial interference. The totality of the circumstances analysis applied in Knights guides our decision.
The officers engaged in two separate actions that have fourth amendment significance. First, Officer Lowe requested and received consent to search defendant's vehicle. Second, Trooper Boyles performed a pat-down search of defendant's person. If the search of the vehicle was improper, it may taint the pat-down search that followed. *710 See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Thus, we consider each step separately to determine whether each action satisfied Terry's scope requirement.
In Gonzalez, a majority of this court established the framework by which we apply the scope requirement to a police question during a traffic stop:
"[W]e must consider, as an initial matter, whether the question is related to the initial justification for the stop. If the question is reasonably related to the purpose of the stop, no fourth amendment violation occurs. If the question is not reasonably related to the purpose of the stop, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the question. If the question is so justified, no fourth amendment violation occurs. In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether, in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop." Gonzalez, 204 Ill.2d at 235, 273 Ill.Dec. 360, 789 N.E.2d 260.
Defendant argues that Officer Lowe impermissibly changed the purpose of the stop when, instead of delivering the completed speeding citation to Sanders, he asked permission to search defendant's truck. The State responds that the search was justified on grounds of officer safety. This response conflates the search of the truck with the search of defendant's person. Officer Lowe testified that he requested permission to search the truck because he felt there might be drugs in the vehicle, not because he felt his safety was at risk.
In light of this testimony, we agree with the defendant that Officer Lowe's request for consent to search defendant's vehicle was clearly unrelated to the purpose of the traffic stop. However, defendant's MSR status makes this situation distinct. The conditions of defendant's MSR put him on notice that law enforcement officials may ask his consent to search his "person, property, or residence under [his] control," including his pickup truck, with or without reasonable suspicion. While not reasonably related to the purpose of the traffic stop, the request to search was reasonable because of the defendant's MSR. Under the conditions of that MSR, Officer Lowe properly asked for defendant's consent to search his pickup. Defendant gave his consent. Therefore, the search of the truck was proper.
We turn next to the pat-down search of defendant. Our case law has established the impropriety of "hard and fast" presumptions that authorize police officers to automatically pat down certain types of suspects. People v. Galvin, 127 Ill.2d 153, 173, 129 Ill.Dec. 72, 535 N.E.2d 837 (1989). In Flowers, this court found an officer's routine practice to be the "[m]ost problematic" factor when it invalidated a suspicionless pat-down search. Flowers, 179 Ill.2d at 266, 227 Ill.Dec. 933, 688 N.E.2d 626. The officer in Flowers testified that he did not have any particular reason to think that the defendant had a weapon, but that he performed a pat-down search anyway, because "I do that as a common thing in my job, to pat people down for my safety as well as theirs." Flowers, 179 Ill.2d at 261, 227 Ill.Dec. 933, 688 N.E.2d 626. The court noted that this practice misapprehends the scope of the Terry exception. Flowers, 179 Ill.2d at 266, 227 Ill.Dec. 933, 688 N.E.2d 626. It held that "[t]he limited exception recognized in Terry * * * clearly does not permit police officers to engage in a practice of routinely *711 frisking individuals, without concern for whether a particular person poses a danger." Flowers, 179 Ill.2d at 267, 227 Ill. Dec. 933, 688 N.E.2d 626. Instead, we have said that an officer may frisk a defendant for weapons only if the officer reasonably believes that the person is armed and dangerous. Sorenson, 196 Ill.2d at 433, 256 Ill.Dec. 836, 752 N.E.2d 1078, citing Flowers, 179 Ill.2d at 262, 227 Ill.Dec. 933, 688 N.E.2d 626.
Thus, Trooper Boyles' routine practice of patting down every person who is outside a vehicle at a traffic stop would be unlikely to withstand the scrutiny of Terry in the abstract. However, we judge the reasonableness of the search before us only by its particular facts and circumstances. See Galvin, 127 Ill.2d at 173, 129 Ill.Dec. 72, 535 N.E.2d 837. An officer's subjective feelings may not dictate whether a pat-down search is valid or invalid. Galvin, 127 Ill.2d at 168, 129 Ill.Dec. 72, 535 N.E.2d 837. Rather, the test is objective: Would the facts available to the officer at the moment of the search "`warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, 392 U.S. at 21-22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906, quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925); Galvin, 127 Ill.2d at 167, 129 Ill.Dec. 72, 535 N.E.2d 837 (test must be objective rather than subjective, or else "an officer who subjectively feels no fear in a situation where a reasonably prudent person in the same circumstances would fear for his or her own safety would never be justified in conducting a pat-down search of a suspect temporarily stopped pursuant to a valid Terry stop"). Again, this question must be answered with reference to the totality of the circumstances analysis employed in Knights.
First, Trooper Boyles had a strong interest in ensuring defendant was not armed. He and his fellow officer were beside a rural road. The two officers were outnumbered by three men well known to law enforcement. Their identities alone suggested enough of a safety concern that Boyles offered his assistance to Officer Lowe as soon as he heard their names over the radio. He was aware through law enforcement circles that all three men were associated with weapons, and he had recently been involved in a weapons-related arrest of McGee. He was also aware that defendant was a parolee.[2]
Notably, the circumstances surrounding the pat-down search involved not just a traffic stop, but a consensual automobile search. This circumstance, which requires passengers to leave the vehicle and an officer to place himself in a compromising position, increases the government's interest in ensuring those passengers are not armed. This court has recognized that the public has a strong interest in officer safety. People v. Gonzalez, 184 Ill.2d 402, 418, 235 Ill.Dec. 26, 704 N.E.2d 375 (1998); People v. Harris, 207 Ill.2d 515, 531 n. 4, 280 Ill.Dec. 294, 802 N.E.2d 219 (2003) (concerns about officer safety are "legitimate and weighty"), citing Pennsylvania v. Mimms, 434 U.S. 106, 110, 98 S.Ct. 330, 333, 54 L.Ed.2d 331, 336 (1977). The risk to an officer is increased by the presence of passengers (Sorenson, 196 Ill.2d at 437, 256 Ill.Dec. 836, 752 N.E.2d 1078), particularly when those passengers are outside *712 the vehicle. Although Trooper Boyles was not the sole officer at the scene, he and Officer Lowe were outnumbered, and Lowe was occupied with the vehicle search. Boyles was not just outnumberedhe was outnumbered by three men he believed to have histories involving weapons and drugs, three men with whom he and his fellow law enforcement officers were quite familiar.
These officer safety circumstances contributed to the government's interest in performing a pat-down search of defendant. The defendant's MSR status also contributed to that interest. The state is justified in focusing greater attention on probationers because of their higher likelihood of recidivism. Knights, 534 U.S. at 120, 122 S.Ct. at 592, 151 L.Ed.2d at 506; Lampitok, 207 Ill.2d at 248, 278 Ill.Dec. 244, 798 N.E.2d 91. Persons on MSR, even more than probationers, present a risk to the public. See 730 ILCS 5/5-6-1(a) (West 2004); People v. Williams, 179 Ill.2d 331, 336, 228 Ill.Dec. 176, 688 N.E.2d 1153 (1997); People v. Spera, 303 Ill. App.3d 834, 838, 237 Ill.Dec. 219, 708 N.E.2d 1259 (1999). The objective officer safety concerns, combined with the defendant's MSR status, established a significant governmental interest in performing a pat-down search to ensure that defendant was not armed.
The defendant's MSR status also impacts the other side of the balance. A parolee has a reduced expectation of privacy compared to ordinary citizens because he or she is a criminal offender. See Lampitok, 207 Ill.2d at 250-51, 278 Ill.Dec. 244, 798 N.E.2d 91, citing People v. Adams, 149 Ill.2d 331, 348, 173 Ill.Dec. 600, 597 N.E.2d 574 (1992). The search condition of defendant's MSR further diminishes that already reduced expectation. We noted in Lampitok that the breadth of a search condition affects a probationer's expectation of privacy. Lampitok, 207 Ill.2d at 251, 278 Ill.Dec. 244, 798 N.E.2d 91. The probationer in that case was subject to a search condition that required her to submit to searches as directed by her probation officer for the purpose of determining her compliance with probation. Lampitok, 207 Ill.2d at 236, 278 Ill.Dec. 244, 798 N.E.2d 91. In contrast, the search condition in Knights required the probationer to submit to searches by any probation officer or law enforcement officer. Knights, 534 U.S. at 114, 122 S.Ct. at 589, 151 L.Ed.2d at 502. The condition of defendant's MSR is similarly broad. It requires that he consent to a search of his person, residence, or property under his control, with no limitation on what government agent may perform that search or what purpose they may have. Accordingly, defendant's expectation of privacy is much more limited than that of the probationer in Lampitok. We note also that, in keeping with the differing purposes of MSR and probation, the statutory conditions attached to each status differ in type. The conditions of probation are fewer in number and include rehabilitative provisions such as community service and substance abuse treatment. 730 ILCS 5/5-6-3 (West 2004). In contrast, the conditions of MSR more extensively curtail the liberty of parolees, limiting where they may live, with whom they may associate, and what places they may frequent. 730 ILCS 5/3-3-7 (West 2004). These differences support the conclusion that a person subject to MSR has a lesser expectation of freedom from government intrusion than a probationer does.
Balancing the defendant's limited privacy interest with the government's interest in performing a pat-down search to ensure officer safety, we hold that the pat-down search of defendant did not violate his fourth amendment right to be free from *713 unreasonable searches. The vulnerable position of the officers, the trooper's concerns about the histories of the men who were pulled over, the defendant's MSR status, and his significantly reduced expectation of privacy make the pat-down search reasonable in light of the totality of the circumstances. The limited scope of a pat-down search for weapons, as opposed to a full-fledged search for evidence, was appropriate where no individualized suspicion of illegal activity existed.
In this particular case, objective concerns about officer safety, combined with the defendant's status as a parolee subject to a search condition, shift the balance in favor of the reasonableness of a pat-down search. We emphasize that our holding is limited to circumstances in which MSR is a factor and does not address the appropriateness of pat-down searches in other situations.

III. Scope
Defendant argues that even if a pat-down search was reasonable at its inception, the extent of the pat-down exceeded the permissible scope of a search. He argues, first, that Trooper Boyles' purpose was to search for contraband instead of weapons and, second, that the trooper impermissibly extended his search after determining the object in defendant's pants was not a weapon. In support, defendant cites Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), in which the Supreme Court invalidated a pat-down search when the officer discovered a lump of cocaine by "`squeezing, sliding and otherwise manipulating the contents of the defendant's pocket.'" Dickerson, 508 U.S. at 378, 113 S.Ct. at 2138, 124 L.Ed.2d at 347, quoting State v. Dickerson, 481 N.W.2d 840, 844 (Minn. 1992). The State responds that Trooper Boyles was properly within the scope of a pat-down search because he was attempting to determine whether the hard object in defendant's pants was a weapon.
The purpose of a pat-down search is to protect the officer and others in the vicinity, not to gather evidence. Flowers, 179 Ill.2d at 263, 227 Ill.Dec. 933, 688 N.E.2d 626, citing Dickerson, 508 U.S. at 373, 113 S.Ct. at 2136, 124 L.Ed.2d at 344. The scope of the search must be limited to actions which are reasonably likely to discover weapons that could be used to harm the officer. Terry, 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. A search that exceeds this scope is constitutionally invalid. Dickerson, 508 U.S. at 379, 113 S.Ct. at 2139, 124 L.Ed.2d at 348.
As we have held above, Trooper Boyles was entitled to perform a pat-down search to learn whether defendant was armed. The record contains no evidence that his purpose was to search for drugs, rather than weapons. Boyles testified that his purpose was officer safety. The record similarly contains no indication that Boyles continued the search after he had assured himself that defendant was unarmed. Unlike the officer in Dickerson, who continued to manipulate the defendant's pocket even after he determined it did not contain a weapon (Dickerson, 508 U.S. at 378, 113 S.Ct. at 2138, 124 L.Ed.2d at 347), Boyles testified that he could not identify the hard object he felt in defendant's pants, but was aware of weapons that are a similar size. In light of this testimony, we hold that the search of defendant did not exceed the proper scope under Terry when Trooper Boyles continued his contact with defendant's pants as he attempted to determine whether the object he felt was a weapon.

CONCLUSION
The circuit court erroneously suppressed the evidence found in the pat-down search of defendant because the search was constitutionally reasonable in *714 light of objective officer safety concerns and the defendant's status as a parolee subject to a search condition.
The judgments of the appellate and circuit courts are reversed and this cause remanded to the circuit court for proceedings in accordance with this disposition.
Judgments reversed; cause remanded.
NOTES
[1] What was known in Illinois law as "parole" prior to February 1, 1978, is now termed "mandatory supervised release" (MSR). 730 ILCS 5/5-8-1(d) (West 2004). For purposes of fourth amendment analysis, there is no difference between a parolee and a defendant on MSR.
[2] One fact that was not available to Trooper Boyles was defendant's unexpected familiarity with Officer Lowe's first name. The State points to this as an illustration of the officer safety risk defendant presented. However, nothing in the record indicates that Boyles was aware of this earlier exchange between defendant and Lowe. Thus, it cannot serve as justification for Boyles' search of defendant.