# Illinois Official Reports

## Appellate Court

***People v. Coleman*, 2013 IL App (1st) 130030**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CRAIG COLEMAN, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0030 |
| Filed<br>Rehearing denied | December 18, 2013<br>January 15, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's grant of defendant's motion to quash his arrest and suppress the heroin discovered in his car following a warrantless search was upheld, notwithstanding the State's contentions that defendant was on parole at the time and had consented to warrantless searches of his person and property, the anonymous tip the officers were acting on led to probable cause when defendant admitted he did not have insurance or a driver's license, and the heroin would have been discovered in an inventory search, since the State forfeited the latter argument by failing to raise it in the trial court, and the unlawful search could not be justified by the discovery after the fact that defendant was a parolee. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-9879; the Hon. Joseph Claps, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Kathleen Warnick, and Susanna Bucaro, Assistant State's Attorneys, of counsel), for the People.

Law Offices of Frank J. Himel, of Chicago (Frank J. Himel, of counsel), for appellee.

Panel

JUSTICE MASON delivered the judgment of the court, with opinion. Presiding Justice Hyman and Justice Neville concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Craig Coleman was charged with possession of a controlled substance with intent to deliver. The trial court granted Coleman's motion to quash arrest and suppress evidence on the grounds that the search of Coleman's vehicle was unconstitutional because the police officers did not know at the time of the search that Coleman was on parole. On appeal, the State contends that the trial court erred in granting the motion because a person who is on parole has consented to warrantless searches of his person or property at any time and the police officers' knowledge of an individual's parole status is irrelevant. In the alternative, the State contends that the search was lawful because the consensual encounter led to probable cause and the controlled substance would have been inevitably discovered later through an inventory search. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 2 BACKGROUND

¶ 3 On May 4, 2012, at approximately 3:40 p.m., Coleman parked a green Infiniti on the east side of Laflin on the block between 50th and 51st Streets in Chicago. Coleman exited the car, crossed to the west side of Laflin, and proceeded to walk south toward 51st Street. When Coleman reached the intersection of Laflin and 51st, a police car pulled directly in front of him. The police officers took Coleman's car keys from him and asked him if he had a driver's license and insurance. After Coleman told the officers he did not have a license or insurance on his person, two officers remained with Coleman while a third officer searched the Infiniti. The police officer found suspected heroin inside the vehicle and Coleman was arrested and subsequently charged with the offense of possession with intent to deliver between 100 and 400 grams of heroin.

¶ 4        On June 25, 2012, Coleman filed a motion to quash his arrest and suppress evidence. At the hearing on the motion, Coleman testified that after the police officer took the car keys from his hand, the officer walked up and down the block trying to determine which car the keys operated. The officer tried the keys on three different cars before finally pressing the alarm to activate the lights. The officer then went to the green Infiniti and searched the vehicle. Coleman testified that he did not consent to the officers taking his car keys or searching his car.

¶ 5        Officer Robert Vahl testified that he and two partners were in a police vehicle and were traveling north on Laflin toward 51st Street when he observed Coleman exiting a green vehicle that was parked on the 5000 block of Laflin. Officer Vahl had received a tip from an anonymous informant that a vehicle matching that description was being used to transport narcotics to a building at 5102 South Laflin. The officers approached Coleman at the intersection of 51st and Laflin.

¶ 6        Officer Vahl asked Coleman who owned the car that he had just exited. Coleman denied ownership of the vehicle and said he did not drive. Officer Vahl noticed that Coleman was carrying two sets of car keys and asked Coleman if he had a valid driver's license or insurance. When Coleman was unable to produce a driver's license or proof of insurance, he was taken into custody. Officer Vahl then approached the green Infiniti and, using the keys he had taken from Coleman, conducted a search of the vehicle. Underneath the driver's seat, he found a black plastic grocery bag containing three separate bags, each containing numerous bags of suspected heroin. On cross-examination, Officer Vahl acknowledged that he did not learn that Coleman was on parole until after he searched the vehicle and found the narcotics.

¶ 7        On August 16, 2012, the circuit court issued its ruling. The court found that there was insufficient reasonable basis or probable cause to detain Coleman based on the testimony at the hearing. The court described the basis for the stop as "nothing but a wish and a hope." After confirming for the record that the State's position was that the search of the vehicle was constitutional because of Coleman's status as a parolee, the circuit court found that it was irrelevant whether the police officers knew of Coleman's status at the time of the search and denied the motion to suppress.

¶ 8        Coleman filed a motion to reconsider and the court heard arguments on the motion on September 27, 2012, and took the matter under advisement. On October 25, 2012, the circuit court noted that it had reviewed the relevant case law and had determined that its earlier ruling had been incorrect. Therefore, the court granted the motion to quash the arrest and suppress evidence on the basis that the search of the vehicle was not allowed where the police officers were not aware that Coleman was on parole at the time of the search. The State filed a certificate of substantial impairment and timely filed this appeal.

¶ 9                                        ANALYSIS

¶ 10      This court has jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Feb. 6, 2013), which permits the State to file an interlocutory appeal from an order quashing an arrest or suppressing evidence. The State contends that the trial court erred in granting Coleman's motion to quash his arrest and suppress evidence because Coleman

prospectively consented to the search of his car when he signed his parole agreement and the fact that the police officer who conducted the search did not know of his status as a parolee was irrelevant.

¶ 11 A motion to suppress involves mixed questions of law and fact. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). Findings of historical fact made by the circuit court will be upheld unless they are against the manifest weight of the evidence. *Id*. However, the ultimate question of whether suppression is appropriate under a particular set of facts is reviewed *de novo*. *People v. Moss*, 217 Ill. 2d 511, 518 (2005).

¶ 12 Both the fourth amendment and the Illinois Constitution guarantee the right of individuals to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The fourth amendment generally requires a warrant supported by probable cause for a search to be considered reasonable but there are a few exceptions to this requirement. *Moss*, 217 Ill. 2d at 518. One such exception involves probationers or parolees. See *id*. at 519; *People v. Wilson*, 228 Ill. 2d 35, 41 (2008). Both the United States Supreme Court and our supreme court have held that probationers and parolees enjoy a greatly diminished expectation of privacy. *Wilson*, 228 Ill. 2d at 41. Thus, when the search is deemed reasonable, a warrant is not required in cases involving parolees and probationers. *Id*. at 40.

¶ 13 In Illinois, parole and mandatory supervised release (MSR) are governed by the same conditions. 730 ILCS 5/3-3-7 (West 2010). An individual on MSR shall "consent to a search of his or her person, property, or residence under his or her control." 730 ILCS 5/3-3-7(10) (West 2010). When Coleman was released, he signed an MSR agreement dated October 17, 2011, that provided, *inter alia*: "you shall consent to a search of your person, property or residence under your control."

¶ 14 As an initial matter, we address the State's argument that Coleman "prospectively consented" to the search of his automobile when he signed the MSR agreement. Our supreme court has expressly stated that an agreement which mandates that a defendant "shall consent to a search" does not constitute prospective consent. *Wilson*, 228 Ill. 2d at 39; see also *People v. Lampitok*, 207 Ill. 2d 231, 260-61 (2003). Just as in *Wilson*, the search here was nonconsensual because the record clearly indicates that the police officers never sought Coleman's consent to search the vehicle.

¶ 15 Therefore, our determination of whether the search of Coleman's vehicle was reasonable turns solely on whether the officer conducting the search must know of a person's status as a parolee at the time of the search. In making its finding that the search was not reasonable because the officers did not know of Coleman's status as a parolee, the circuit court relied on *Samson v. California*, 547 U.S. 843 (2006), and *Wilson*, 228 Ill. 2d 35. However, neither of these cases directly addresses whether the officer's knowledge of parolee status is required.

¶ 16 In *Samson*, the Supreme Court held that the fourth amendment does not prohibit a police officer from conducting a search of a parolee in the absence of a reasonable suspicion that the parolee is engaged in criminal activity. *Samson*, 547 U.S. at 857. In *Wilson*, our supreme court applied the holding of *Samson* and concluded that a search of a parolee's residence without reasonable suspicion is constitutional. *Wilson*, 228 Ill. 2d at 52.

¶ 17 The defendant in *Samson* was on parole in the state of California and, as a condition of parole, had agreed to be subject to search or seizure with or without a warrant or cause. *Samson*, 547 U.S. at 846. A police officer who knew the defendant, knew he was on parole, and thought he had an outstanding warrant saw him walking down the street and stopped him to ask about the warrant. *Id*. Although the officer confirmed by radio that the defendant was on parole but did not have an outstanding warrant, he searched the defendant based solely on his status as a parolee and found a controlled substance in the defendant's pocket. *Id*. at 846-47. The Court held that a search based solely on parolee status was constitutional. *Id*. at 846.

¶ 18 In *Wilson*, the defendant's parole officer received an anonymous tip that the defendant was violating the conditions of his parole agreement and ordered two police officers to search the defendant's bedroom without obtaining a warrant or the defendant's consent. *Wilson*, 228 Ill. 2d at 36. On these facts, the court held that the search was reasonable, relying on the Supreme Court's holding in *Samson*. *Id*. at 52.

¶ 19 The distinguishing fact in both *Samson* and *Wilson* is that the searches were conducted with the knowledge that the defendants were on parole. In explaining its rationale for concluding that a suspicionless search of a parolee was reasonable, the *Samson* Court highlighted California's substantial interest in reducing recidivism by supervising parolees. *Samson*, 547 U.S. at 853. However, we note that this interest is not implicated where, as here, the officer conducting the search has no knowledge that the defendant is on parole.

¶ 20 Moreover, as Coleman points out, in addressing the dissent's concern that allowing suspicionless searches gives police officers unbridled discretion to conduct searches, the *Samson* Court noted that, under California law, if an officer had no knowledge that a person stopped was a parolee, a suspicionless search would be unreasonable. *Id*. at 856 n.5. The State argues that because the Court made specific reference to California law, it intended to leave the determination of whether a reasonable search requires knowledge of parole status to each of the individual states. The State goes on to argue that because our supreme court did not mention a knowledge requirement in *Wilson*, such a requirement does not exist and the trial court erred in granting Coleman's motion to suppress.

¶ 21 The State offers no authority for the proposition that the failure to mention a knowledge requirement in *Wilson* leads to the conclusion that Illinois does not recognize such a requirement. As previously noted, the search in *Wilson* was initiated by the defendant's parole officer, so there was no need for the court to discuss whether a search would be considered reasonable if the officer did not know that the defendant was on parole. We agree with the reasoning of the California Supreme Court and conclude that an unlawful search of a vehicle cannot subsequently be justified because, unbeknownst to the police, the owner or operator of the vehicle happened to be on parole. See *People v. Sanders*, 73 P.3d 496, 505-06 (Cal. 2003).

¶ 22 We now turn to the State's alternative argument that, apart from Coleman's parole status, he was lawfully arrested and the narcotics would have been inevitably discovered through an inventory search. The State argues that when the officers approached Coleman on the basis of an anonymous tip, they engaged in a consensual encounter which escalated to probable cause when Coleman admitted that he did not have a driver's license or insurance on his person.

¶ 23    Coleman correctly notes that, by failing to raise this argument in the circuit court, the State has forfeited this argument on review. See *People v. Adams*, 131 Ill. 2d 387, 396 (1989). Indeed, the State abandoned any semblance of this argument at the hearing and expressly stated, when questioned by the trial court, that its position was that the search was constitutional because of Coleman's status as a parolee. Therefore, this argument has been forfeited and we decline to address it.

¶ 24    For the reasons stated herein, we affirm the judgment of the circuit court.

¶ 25    Affirmed.