NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170855-U

NO. 4-17-0855

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 20, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ERIC WEGNER, | ) | No. 17CF146 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mark A. Fellheimer, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in denying defendant's motion to suppress his statement to the police officer admitting he had used the hypodermic syringe found on his person to inject heroin.

¶ 2    In a September 2017 bench trial, defendant was convicted of unlawful possession of a hypodermic syringe. In this direct appeal, he challenges his conviction, claiming the trial court erred in denying his motion to suppress his admission he had used the syringe to inject heroin. After our review of the issues presented, we affirm defendant's conviction, finding the court did not err in denying defendant's motion to suppress.

¶ 3                               I. BACKGROUND

¶ 4    On May 9, 2017, Fairbury police stopped a vehicle for an expired registration. Defendant was the front seat passenger in this vehicle. After identifying the two occupants of the vehicle, the officer, Keith Semmerling, learned defendant was on mandatory supervised release

(MSR). A recording of the traffic stop showed Semmerling approach the passenger side of the vehicle and question defendant about his parole status. Defendant acknowledged he was on MSR. Semmerling explained to defendant that since he was on "MSR parole custody," he was subject to a search of his person and his "immediate area." Defendant stated he did not realize that but nevertheless cooperated with the officer. Semmerling asked defendant to "hop out" of the vehicle so he could be searched. Defendant exited the vehicle and walked voluntarily to the hood of the squad car. Semmerling asked defendant "if [he] had anything on him—knives, weapons, anything like that." Defendant said he had "a needle in [his] pocket." The officer asked if it was dirty, and defendant said yes. Semmerling asked defendant to remove the syringe from his pocket and place it on the hood of the squad car. Semmerling asked defendant if he used heroin with that syringe, and defendant said yes. The officer advised defendant he was not under arrest, but he was "detained for sure."

¶ 5        The State charged defendant with two counts: count I alleged he committed the offense of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)) for knowingly possessing a substance containing heroin, a Schedule I controlled substance (720 ILCS 570/204(c)(12) (West 2016)); and count II alleged he committed the offense of unlawful possession of a hypodermic syringe (720 ILCS 635/1 (West 2016)). The State subsequently dismissed count I.

¶ 6        Defendant filed a motion to suppress "all information obtained upon such detention and arrest," claiming he was interrogated while in custody without being advised of his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) and made statements in violation of the fifth amendment to the United States Constitution (U.S. Const., amend. V).

¶ 7        The trial court conducted a hearing on defendant's motion to suppress. Semmerling, defendant's only witness, testified he was dispatched to assist with the traffic stop. He approached the passenger side of the vehicle and spoke with defendant. He advised defendant he was on MSR and, therefore, subject to a search. Semmerling told defendant he was going to search him and to exit the vehicle. At that point, defendant was not free to leave.

¶ 8        Semmerling testified he escorted defendant to the front of the squad car while asking him if he had anything illegal on his person. Defendant advised he had a needle. Semmerling said he did not advise defendant of his *Miranda* rights because he "wasn't interrogating him at that time. [He] was just searching his person, making sure he didn't have any weapons or anything like that on his person." Defendant's counsel asked Semmerling to distinguish between "questioning" and "interrogating" someone. Semmerling responded:

"A. In this case, I wasn't interrogating as to ask, you know, self-incriminating questions. I was just asking if he had anything illegal on his person that I needed to be concerned about as far as weapons, guns, stuff like that[.]

Q. Okay.

A. [T]hat's what I was getting at.

Q. And then he indicated he did?

A. Yes.

Q. And then you questioned him further?

A. I asked if it was going to be a dirty needle, because I didn't want to put my hand in his pocket if it was going to be a dirty needle.

Q. Well, you didn't want to put your hand in his pocket whether it was dirty or clean, did you?

A. Correct. But—

Q. Let me ask the question. If it was a clean needle, you didn't want to stick your hand in there and get stuck. Right?

A. I wouldn't want to get stuck, right.

Q. And if it was a dirty needle, you didn't want to stick your hand in there and get stuck. Right?

A. Correct. But you would want to use more caution if you know it is a dirty needle."

¶ 9 After viewing the recording of the traffic stop, Semmerling admitted he questioned defendant about whether the syringe was clean or dirty after it was laying on the hood of the squad car to "determine if [an] arrest needed to be made[.]" Semmerling corrected counsel's characterization of the situation, stating he did not "arrest him [based upon defendant's admission that the syringe was dirty]; [he] detained him at this stage in the video." But Semmerling acknowledged defendant was "detained" with handcuffs and placed in a squad car.

¶ 10 On cross-examination, Semmerling explained his intent was to search defendant's person to ensure he was in compliance with his MSR terms. If no contraband was found during the search, Semmerling was going to allow defendant to get back in the vehicle and "go on his way." Semmerling explained he asked defendant if he had anything illegal prior to the search solely for officer-safety reasons. The following exchange occurred:

"Q. Okay. Okay. And after he does say that he has a needle, you know, what was the purpose, I guess, of your questions after that point regarding what was in the needle or what he was using it for?

A. I asked after that if it was a dirty needle; and he stated, yes. That was to make sure, one, if, you know it's not, like I said to [defense counsel] earlier, it's not illegal to possess the needle in and of itself. And also, I wanted to use more extreme caution if I knew that needle was used for heroin.

Q. Okay. So, at that point, you were just trying to figure out what, if anything, was the status of this needle—

A. Yes.

Q. —and whether or not it could be, it would be a crime or whether it might not be a crime?

A. Yes.

Q. Okay. So, your intent at that point, you were just investigating the situation?

A. I was trying to determine if a crime had been committed.

Q. Okay."

¶ 11 The trial court denied defendant's motion to suppress, finding the encounter at the hood of the squad car was not custodial and any questioning of defendant by the officer was for the purposes of officer safety, not for purposes of interrogation.

¶ 12 The case proceeded to a bench trial. The record in this case includes a bystander's report in lieu of a transcript or report of proceedings of the trial. According to the bystander's report, Semmerling's testimony at trial was consistent with his testimony at the hearing on the motion to suppress. The State played the recording of the traffic stop for the trial court. At the close of the evidence, the court found defendant guilty of unlawful possession of a hypodermic

syringe. The court found, based on defendant's statements to Semmerling, this particular syringe had been adapted for use of subcutaneous injection of controlled substances.

¶ 13        The trial court sentenced defendant to 10 days in jail.

¶ 14        This appeal followed.

¶ 15                              II. ANALYSIS

¶ 16        Defendant claims the trial court erred in denying his motion to suppress statements he made to Semmerling about the syringe in his pocket when he was in custody and interrogated without being advised of *Miranda* warnings. He claims these inadmissible statements were then used against him at trial and, therefore, his conviction should be reversed. We disagree.

¶ 17        Typically, a bifurcated standard of review applies when reviewing a ruling on a motion to suppress. See *People v. Sadeq*, 2018 IL App (4th) 160105, ¶ 49 (noting when reviewing a ruling on a motion to suppress, a trial court's findings of fact are reviewed under a manifest-weight-of-the-evidence standard, while the court's conclusions of law are reviewed *de novo*). Here, we will review the trial court's factual findings to determine if they are against the manifest weight of the evidence. Then, applying a *de novo* standard, we will determine whether the court's suppression ruling was appropriate by "undertaking our own assessment of the facts in relation to the issues presented." *People v. Moss*, 217 Ill. 2d 511, 518 (2005).

¶ 18        We begin by noting that both sides agree defendant was subject to a search of his person based upon his "parole MSR custody" status. Indeed, "[p]ersons on MSR, even more than probationers, present a risk to the public." *Id.* at 531. Thus, the "objective officer safety concerns, combined with the defendant's MSR status, established a significant governmental interest in performing a pat-down search to ensure that defendant was not armed." *Id.*

¶ 19		Despite the reasonableness of the pat-down search, defendant claims Semmerling should have given defendant *Miranda* warnings, advising him he had the right to remain silent when questioned about the hypodermic syringe. If he had been so advised, he claims, he would not have incriminated himself by stating he had used the syringe to inject heroin.

¶ 20		A person is entitled to *Miranda* warnings when he is about to be interrogated by law enforcement after he has been taken into custody. See *Miranda*, 384 U.S. at 444. "The finding of custody is essential, as the preinterrogation warnings required by *Miranda* are intended to assure that any inculpatory statement made by a defendant is not simply the product of 'the compulsion inherent in custodial surroundings.' " (Internal quotation marks omitted.) *People v. Slater*, 228 Ill. 2d 137, 149 (2008) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004)). "Accordingly, it is well recognized that *Miranda* is not triggered, and the admonishments are not required, when police conduct general investigatory on-the-scene questioning as to the facts surrounding a crime." *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 42.

¶ 21		When examining the circumstances of an interrogation to determine whether statements were made in a custodial setting, thereby triggering *Miranda*, our supreme court has found a number of factors to be considered: (1) the location, time, length, mood, and mode of the questioning; (2) the number of police officers present during the interrogation; (3) the presence or absence of family and friends of the individual; (4) any indicia of a formal arrest procedure, such as the show of weapons or force, physical restraint, booking, or fingerprinting; (5) the manner by which the individual arrived at the place of questioning; and (6) the age, intelligence, and mental makeup of the accused. *Slater*, 228 Ill. 2d at 150.

¶ 22		After considering the relevant factors and all circumstances in this case, we find defendant was not subjected to a custodial interrogation when he advised Semmerling he had a

dirty syringe in his pocket that he had used the day before to inject heroin. At the scene of the traffic stop, Semmerling properly advised defendant he was subject to a search of his person due to his parolee status. He asked defendant to "hop out" of the vehicle. Semmerling did not use force or threaten the use of force. He spoke with defendant in a conversational tone. Defendant exited the vehicle and was allowed to freely walk to the front of the squad car. Although admittedly defendant was not free to leave, he was not placed in handcuffs or forced into any position. In the interest of his own safety, Semmerling asked defendant if he had anything illegal like "knives or weapons" on him. Semmerling's questions regarding the syringe after learning it was in defendant's pocket can be characterized as general, on-the-scene questioning intended to aid Semmerling in his search. Semmerling's level of caution with regard to his potential contact with the syringe would be affected by whether it was clean or dirty and what substance it contained. Semmerling's questions were not intended to interrogate defendant but were general fact-gathering questions for officer-safety purposes. Based on these facts, we conclude the circumstances did not trigger the requirement for *Miranda* warnings.

¶ 23                                III. CONCLUSION

¶ 24         For these reasons, we affirm the trial court's order denying defendant's motion to suppress.

¶ 25         Affirmed.

- 8 -